# EXHIBIT A

AGREEMENT BY AND BETWEEN

## COMMUNITY COLLEGE OF PHILADELPHIA

### AND

### BANNERWORKS, INC. (DBA) KORYN ROLSTAD STUDIOS

### FOR PUBLIC ARTWORK DESIGN, FABRICATION, TRANSPORTATION & INSTALLATION

**THIS AGREEMENT** (the "Agreement") is entered into this _____17th_____ day of November, 2015, by and between the **COMMUNITY COLLEGE OF PHILADELPHIA**("CCP"), an Instrumentality of the Commonwealth of Pennsylvania, and **BANNERWORKS, INC., (DBA) KORYN ROLSTAD STUDIOS** ("KRS"), a Washington corporation registered to do business in Pennsylvania (collectively, CCP and KRS are referred to in this Agreement as the "Parties" and individually each is referred to in this Agreement as a "Party").

**WHEREAS**, the Philadelphia Redevelopment Authority's Percent for Art Program requires the allocation for public art of one percent (1%) of certain capital expenditures;

**WHEREAS**, CCP is required to commission an original work of public art in accordance with the Percent for Art Program;

**WHEREAS**, CCP has specific responsibilities that include Percent for Art Program components, including, but not limited to, entering into a contract directly with KRS on an eligible Percent for Art Program funded project;

**WHEREAS**, CCP desires to commission a work of public art to be located prominently at the Work Site to comply with the Percent for Art Program;

**WHEREAS**, in conformity with the Percent for Art Program, CCP selected (and the PRA approved) KRS to design, fabricate, transport and install the Artwork for acceptance by CCP; and

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, by and through the Parties' authorized representatives, and intending to be legally bound hereby, the Parties agree as follows:

**Article 1.**     **Definitions**

Words capitalized but not otherwise defined in this Agreement shall have the following meanings:

(a)      "*Artwork*" means the work of art designed and created by KRS and accepted by CCP and includes the design, fabrication and installation of the artwork, and any necessary Work

1

Base, as further defined in Exhibit "A" attached hereto and incorporated herein, as such design shall be mutually modified pursuant to Article 2.1(F) of this Agreement;

(b)     "*Final Completion*" means KRS has completed to the reasonable satisfaction of CCP: (i) all of KRS's services under this Agreement including, but not limited to, all punch list items relating to installation of the Artwork; (ii) KRS has provided CCP with all documentation required under this Agreement; and (iii) CCP has acknowledged KRS's completion of (i) and (ii) through issuance of a "Notice of Acceptance" as set forth in Article 2.5(B) of this Agreement;

(c)     "*Final Design*" means the approved final design as approved in writing by CCP including, but not limited to, the final design drawings and sealed structural drawings to be provided by KRS to CCP; provided, however, CCP's approval of the final design including, but not limited to, the final design drawings and sealed structural drawings shall not relieve KRS of any of its obligations and/or liabilities under this Agreement;

(d)     "*Percent for Art Program*" means the "Adoption of Percent for Art Program Policies and Guidelines" as set forth in Executive Order No. 08-14 and the City of Philadelphia's Percent for Art Ordinance (Code Section 16-103);

(e)     "*PRA*" means the Philadelphia Redevelopment Authority established by the Percent for Art Program providing for the functions, powers and duties to administer the public artwork program;

(f)     "*Work Base*" means the foundation upon which the work of art is mounted and is considered a component of the Artwork;

(g)     "*Work Location*" means area of the CCP main campus along 17th Street, between Spring Garden Street and Callowhill Street in Philadelphia; and

(h)     "*Work Site*" means the specific area of the CCP main campus commonly known as the Pavilion Plaza along 17th Street, Philadelphia, Pennsylvania, located within the Work Location, in which the Artwork is to be permanently attached or installed.

**Article 2.     Scope of Services**

*2.1     General Duties of KRS and CCP.*

A.     KRS and CCP agree to work cooperatively in the execution of each party's respective duties and responsibilities as delineated in this Agreement.

B.     KRS shall perform all services and furnish all supplies, materials, and equipment as necessary to design, fabricate, transport, and install the Artwork and the project plaque at the Work Site, except as otherwise agreed to in this Agreement.

C.     KRS shall determine the artistic expression, scope, design, color, size, material and texture of the Artwork, subject to review and acceptance by CCP as set forth in this

2

Agreement. The conceptual theme for the Artwork is "Illuminated Growth" and is set forth in greater detail in Exhibit "A" attached hereto and incorporated herein.

     D.    KRS represents and warrants to CCP that the Artwork to be designed, fabricated and installed is a unique, original work of art especially designed for the Work Site and has not and will not be duplicated by KRS without the prior written permission of CCP.

     E.    KRS will deliver to CCP structural drawings certified by a Pennsylvania licensed professional engineer. The stamped structural drawings will establish the engineering soundness of the Artwork and the proposed installation of the Artwork at the Work Site.

     F.    KRS and CCP shall collaborate together in good faith to further refine the conceptual design set forth in Exhibit "A" of this Agreement to arrive at a mutually acceptable Final Design (based on the original design and intent), which mutually acceptable Final Design shall not exceed the amount of the Fee, unless otherwise mutually agreed upon through an amendment to this Agreement.

     (1)    The design development collaboration shall involve no more than two (2) in-person meetings at CCP and two (2) video conference meetings with KRS and CCP, to be scheduled at their mutual convenience.

     (2)    If a mutually agreed-upon Final Design is not achieved within the four (4) design-development meetings, then CCP may terminate the Agreement, but KRS shall retain the right to Payment 1 on the attached Exhibit "B".

     G.    CCP must approve the Final Design before any work is begun on the fabrication of the Artwork. If CCP, in its reasonable discretion, determines that: (1) the Final Design is not in conformance with the conceptual design proposed by KRS in Exhibit "A" of this Agreement as updated by mutually agreed upon design enhancements pursuant to Section 2.1(F) of this Agreement, (2) the maintenance associated with the Final Design would be prohibitively expensive, or (3) the Final Design does not comply with the Americans With Disabilities Act, as amended through the date of this Agreement, then CCP will not approve the Final Design and KRS will be required to modify the design of the Artwork to the reasonable satisfaction of CCP without an increase in the amount of the Fee. Furthermore, if the Artwork is modified for any reason after CCP has approved the Final Design, the modifications of the Artwork shall: (i) be mutually agreed upon; (ii) not make the maintenance of the Artwork prohibitively expensive; and (iii) shall comply with the Americans With Disabilities Act, as amended. In the event additional costs are incurred by KRS for mutually agreed upon enhancements to the Final Design to address items (i), (ii) and (iii) as noted above, then this Agreement shall be amended and such reasonable costs as incurred by KRS will be paid by CCP.

     H.    KRS shall secure any and all required licenses, permits and similar legal authorizations at KRS's sole expense as may be necessary for the installation of the Artwork at the Work Site. KRS shall be responsible for compliance with all applicable laws and regulations, including, but not limited to, zoning, environmental, and accessibility laws and regulations.

3

I.      KRS shall arrange the transportation and installation of the Artwork in consultation with CCP. KRS shall oversee installation. If KRS does not install an element of the Artwork, KRS shall supervise and approve the installation by KRS' subcontractor, if applicable. CCP shall provide safe and covered storage and/or holding area for delivery of art elements for installation at the Work Site.

J.      Prior to utilizing the services of any subcontractors on the design, fabrication, transportation, or installation of the Artwork, KRS shall provide a list of all subcontractors to CCP, copies of the subcontract(s), and certificates of insurance for each subcontractor that comply with the insurance requirements outlined in Article 7 of this Agreement. KRS shall submit to CCP notarized final waivers of liens for each subcontractor and for KRS with the final application for payment. CCP may withhold the final payment to KRS until KRS submits said notarized final lien waivers to CCP's satisfaction. CCP will provide final lien waiver templates both for execution by KRS and for KRS' submission to and use with subcontractors.

K.      KRS shall fabricate the Artwork consistent with the Final Design, as approved by CCP.

L.      KRS shall supervise all work related to the completion of the Artwork and be available with reasonable advance notice for in-person meetings, ceremonies, and other events, as requested by CCP.

M.      KRS will develop and present a student engagement session(s) (collectively, the "Student Engagement Session") at a mutually agreed upon time. The Student Engagement Session may be a forum, public discussion, or master class. The Parties shall mutually determine at a later date the exact format of the Student Engagement Session, but the Student Engagement Session shall be at least two (2) hours in total length. The Student Engagement Session will be offered free of charge to CCP's student body. CCP will widely advertise the Student Engagement Session on-campus and will provide the space for the Student Engagement Session. Any and all of KRS's costs for development, presentation, and travel for the Student Engagement Session shall be borne by KRS.

N.      CCP shall bear the cost for and perform the following services:

(1)      Preparation of the Work Site, in consultation with KRS, including providing the Work Base for the Artwork;

(2)      Provision for KRS to have reasonable access to the Work Site for the execution, assembly, and installation of the Artwork. CCP shall in consultation with KRS take reasonable precautions to secure the Work Site and any components of the Artwork already partially or fully installed at the Work Site during the installation of the Artwork. Notwithstanding anything to the contrary in this Agreement, CCP shall have no liability to KRS for damage to or loss of the Artwork prior to Final Completion of the Artwork. KRS shall not store any uninstalled components of the Artwork at the Work Site, instead storing all uninstalled components of the Artwork at a secure, off-site facility until all such components have been incorporated into and affixed to the Artwork.

4

(3)     CCP, in its sole discretion, will facilitate reasonable, minor, and necessary alterations to CCP's construction plan for the Work Site to accommodate the Artwork.

2.2     *Milestones, Payment Schedule, Construction Schedule, and Progress Reports*

A.     Milestones and Payment Schedule

(1)     KRS shall be paid a total lump sum of Two Hundred Seventy Five Thousand Dollars ($275,000.00) (the "Fee") in accordance with the Milestone and Payment Schedule attached hereto as Exhibit "B", which Fee includes compensation for KRS for all of the costs and expenses of any kind and applicable taxes.  Payment by CCP shall be upon completion and approval by CCP of KRS's work through each phrase described in Exhibit "B" of this Agreement.

(2)     The Fee includes the possible inflation of service and material costs between the date of execution of this Agreement and Final Completion.

(3)     If KRS incurs costs in excess of the Fee, KRS shall pay such excess from KRS's own funds.

B.     Schedule of Completion

(1)     KRS shall meet each milestone on the schedule in Exhibit "B" and reach Final Completion of the Artwork in strict accordance with the schedule set forth in Exhibit "B".  CCP shall have the right to require that KRS's work be coordinated with any construction related to the Work Site.

(2)     CCP may decide to extend or modify the installation portion of the project schedule due to weather-related concerns or to accommodate CCP's academic calendar.  CCP shall consult in good faith with KRS, but CCP retains the right to make the final decision related to any extension or modification in the installation portion of the project schedule attached in Exhibit "B".  CCP shall use its reasonable discretion in approving or rejecting any requests by KRS to extend the installation portion of the project schedule.

C.     Fabrication Stage

(1)     KRS shall fabricate and install the Artwork consistent with the Final Design, including, without limitation, supervising all aspects of the fabrication of the Artwork to ensure proper fabrication of the Artwork.  KRS may not deviate from the Final Design without the prior written approval of CCP.

(2)     KRS shall take reasonable measure to protect or preserve the integrity of the Artwork including, but not limited to, from graffiti.  If the Artwork is being constructed on the Work Site, KRS shall avoid creating disruptive conditions arising out of KRS's operations.

5

(3)     Prior to requesting authorization to transport and install the Artwork, KRS shall be required to provide CCP with a list of all workers or subcontractors and equipment to be used along with the hours of operation and the scope of work to be performed on the Work Site. All additional workers or subcontractors must provide proof of liability insurance prior to entering the Work Site. CCP shall have the right, in its sole discretion, to restrict the hours of operation at the Work Site to reasonable hours that do not affect CCP's operations or community members.

(4)     If mutually agreed upon by KRS and CCP that various elements of the Artwork are to be fabricated at locations away from the Work Site, then KRS shall notify CCP in writing when each element of the Artwork is ready for inspection, prior to transporting to the Work Site.

(5)     CCP shall have the right to review the Artwork at reasonable times during the fabrication thereof upon reasonable notice to KRS.

(6)     If CCP, upon review of the Artwork, determines that the Artwork does not conform to the Final Design, CCP reserves the right to notify KRS in writing of the deficiencies.

(7)     KRS will cure any deficiencies in the Artwork within thirty (30) calendar days of KRS receiving notice from CCP of such deficiencies, and KRS will notify CCP in writing of completion of cure. CCP shall promptly review the Artwork within fifteen (15) calendar days after receiving notice from KRS of identification of cure and CCP shall provide written notice to KRS within such fifteen (15) calendar day period as to whether the deficiencies have been cured. If KRS disputes CCP's determination that the Artwork does not conform, KRS shall within ten (10) calendar days submit reasons in writing to CCP. CCP will make reasonable efforts to resolve the dispute with KRS in good faith; however final determination as to whether KRS has complied with the terms of this Agreement shall remain with CCP, which determination shall be reasonable and made in good faith.

(8)     CCP shall promptly notify KRS of any delays at the Work Site impacting installation of the Artwork. KRS shall be required to inspect the Work Site prior to the transportation and installation of the Artwork and shall notify CCP of any adverse Work Site conditions that shall impact the installation of the Artwork which are in need of correction. KRS shall be entitled to additional time to perform this Agreement due to delays caused by CCP. In the event delays are caused solely by CCP and such delays result in additional costs for KRS, CCP shall compensate KRS for any out of pocket expenses (without mark-up) that KRS actually incurs as a result of the delay; provided, however, KRS shall provide CCP with advance written notice of such additional costs and any additional costs shall be memorialized through an amendment to this Agreement.

D.     Changes to Design

(1)     KRS shall present CCP for its review and written approval any changes in the scope, design, color, size, material, texture, and/or location of the Artwork at the

6

Work Site, or change of the project intent of the Artwork that is not permitted by or in conformity with the Final Design, as approved by CCP.

        (2)     KRS shall not implement or proceed with any proposed change(s) in scope, design, color, size, material, texture, and/or location of the Artwork without written approval by CCP; provided, however, CCP's approval shall not relieve KRS of any of its obligations and/or liabilities under this Agreement.

        (3)     KRS shall have the right to make minor artistic or aesthetic changes to the Artwork, subject to the approval of CCP, which approval shall not be unreasonably withheld, conditioned or delayed.

    *2.3     Delivery and Installation*

        A.     The installation date for the Artwork is set forth in Exhibit "B" attached hereto and incorporated herein and such installation shall be subject to change as allowed pursuant to this Agreement. KRS shall notify CCP, in writing, in advance, of the date when the Artwork is expected to be completed and when KRS expects to deliver and install the Artwork at the Work Site.

        B.     KRS will coordinate closely with CCP to ascertain that the Work Site is prepared to receive the Artwork. KRS must notify CCP of any adverse conditions at the Work Site that would affect or impede the installation of the Artwork. KRS may not install the Artwork until authorized to do so by CCP.

        C.     KRS is responsible for delivery and timely installation of the Artwork. CCP may elect, in its sole discretion, to inspect the fabricated Artwork prior to the delivery of the Artwork to the Work Site to determine whether the Artwork is in conformity with the Final Design, as approved by CCP.

        D.     KRS shall be present to supervise the installation of the Artwork. KRS shall allow representatives of CCP to perform Work Site visits at any time to verify the percent completion and inspection of the Artwork and the project plaque.

        (1)     If KRS utilizes subcontractors to install the Artwork, KRS shall designate in writing before starting work on the Work Site, an authorized representative(s) who shall have the authority to represent and act for KRS. Names and telephone numbers of those in charge of or responsible for the work shall be submitted to CCP to allow for necessary communication.

        E.     KRS shall maintain a neat appearance to the work at the Work Site. KRS shall be responsible for any clean-up of the Work Site made necessary by the installation of the Artwork, including, without limitation, removal of equipment, materials and the repair of any portion of the Work Site or surrounding area damaged by the installation of the Artwork. CCP to perform the duty of re-landscaping after installation.

7

F.      KRS shall provide a project identification plaque for the Artwork, which shall include the following information: the title of the Artwork; KRS's name; year of completion, a statement that the Artwork was "Carried out in cooperation with the Philadelphia Redevelopment Authority's Percent for Art Program and the Commonwealth of Pennsylvania". The project plaque must be approved by CCP and PRA prior to fabrication.  The project plaque shall be delivered to the Work Site and installed by KRS at the time of installation of the Artwork where it shall permanently remain per CCP direction.

2.4     *Post-Installation Documentation*

A.      Within thirty (30) days after the installation of the Artwork, KRS shall furnish CCP with the following relating to the Artwork as completed and installed:

(1)     Final documentation that includes high quality digital photographs, with a minimum of 300 dpi (dots per inch) resolution, of the Artwork;

(2)     A full written description of the Artwork including KRS biographies;

(3)     And, upon installation of the Artwork, KRS shall provide to CCP:

(i)     Written instructions for appropriate maintenance and preservation of the Artwork, including, but not limited to, a proposed maintenance schedule;

(ii)    A comprehensive list of <u>all</u> materials used in the creation of the Artwork (e.g., gauge and type of metal, adhesive materials, paint specifications, clay body and firing, etc.); and

(iii)   As-built drawings for the Artwork.

2.5     *Final Completion*

A.      KRS shall notify CCP, in writing, when all KRS services required under this Agreement have been completed and KRS has delivered all applicable documentation to CCP as required under this Agreement.

B.      CCP shall notify KRS, in writing, using the "Notice of Acceptance" attached to this Agreement as Exhibit "C", if CCP determines, in its reasonable discretion, the Artwork has reached the stage of Final Completion.

C.      CCP's acknowledgement of Final Completion shall be conditioned upon KRS's disclosure of any outstanding or disputed claims against CCP arising out of the Artwork, such as claims by subcontractors, suppliers or fabricators, or upon KRS's certification that to KRS's knowledge no such claims exist.

D.      If CCP reasonably determines, in good faith, and notifies KRS within thirty (30) calendar days of receipt of KRS's written notice in Article 2.5(A) of this Agreement

8

that services and/or documentation which KRS is responsible for under this Agreement are incomplete and/or unsatisfactory, KRS shall promptly resolve the issues to the reasonable satisfaction of CCP at no additional cost to CCP.  If CCP fails, within thirty (30) calendar days of the final completion of installation of the Artwork by KRS, to return to KRS the signed Notice of Acceptance or to notify KRS that KRS's services and/or documentation are unsatisfactory, title and ownership for the Artwork will transfer from KRS to CCP upon final payment to KRS.

### 2.6    Risk of Loss

The risk of loss or damage to Artwork shall be borne by KRS until Final Completion and KRS shall take such measures as are necessary to protect the Artwork from loss or damage until Final Completion.  KRS shall carry insurance to cover risk of damage to the Artwork until Final Completion and the issuance of the Notice of Acceptance to KRS.

### 2.7    Title

Title to the Artwork shall pass to CCP upon issuance by CCP of the Notice of Acceptance signed by CCP.  CCP shall provide insurance for the Artwork following CCP's execution of the Notice of Acceptance.

## Article 3.    Term

This Agreement shall not become effective until it is fully executed by KRS and CCP. The services to be provided under this Agreement shall be completed in accordance with the schedule set forth in Exhibit "B" hereto, unless extended as provided elsewhere herein.

It is agreed that any and all obligations arising under Article 2 (including, but not limited to, Sections 2.5 and 2.7), and Articles 6, 7, 8, 9, 20, 22 and 24 shall survive the termination of this Agreement, and such survival shall specifically include any other terms and provisions of the Agreement necessary to give full force and effect to said provisions.

## Article 4.    Compensation and Payment Schedule

### 4.1    Fixed Fee

For purposes of this Agreement, CCP shall pay KRS the Fee as set forth in Article 2.2(A) of this Agreement.  The Fee will be paid in accordance with the Milestones and Payment Schedule attached hereto as Exhibit "B" and shall constitute full compensation for all design, fabrication, printing coordination, transportation, installation and any other services and related taxes, insurance, filing fees, engineering fees, professional conservator fees, materials, shipping or mailing charges, incidentals, and/or travel for KRS or KRS's subcontractors or employees to be furnished by KRS under this Agreement.  The Fee shall be paid in the installments set forth in the Milestones and Payment Schedule attached hereto in Exhibit "B" that correspond to phases of completion of the Artwork with thirty (30) calendar days following receipt by CCP of an invoice signed by KRS.

### 4.2    Taxes

9

ACTIVE 31555916v14 11/11/2015

KRS shall be responsible for any and all applicable federal, state, and local taxes arising or resulting from the performance of services under this Agreement.

## Article 5.    Time of Performance

### 5.1    Duration

The services to be performed by KRS as set forth in this Agreement shall be completed in accordance with the schedule set forth in Exhibit "B" attached hereto.

### 5.2    Extension of Time

CCP shall grant a reasonable extension of time to KRS in the event there is a delay solely caused by CCP in performing the obligations under this Agreement, or if Acts of God render timely performance of KRS's services impossible.  Failure to fulfill contractual obligations due to Acts of God will not be considered a breach of this Agreement provided that such conditions shall be suspended only for the duration of such Acts of God.

All requests by KRS for time extensions, including those requested due to Acts of God, shall be made in writing to CCP.  CCP will review all written requests and notify KRS in writing within five (5) days of receipt of the written request.  All dates herein shall be deemed extended by each extension granted hereunder.

## Article 6.    Warranties

### 6.1    Warranties of Title

KRS represents and warrants that the Artwork to be created: (a) is solely the result of the artistic effort of KRS; (b) is unique and original; (c) is not a duplicate thereof, has not been accepted for sale elsewhere; (d) does not infringe upon any copyright; and (e) is free and clear of any liens or claims from any source whatsoever.

### 6.2    Warranties of Quality and Condition

KRS represents and warrants that: (a) all of its services under this Agreement including, but not limited to, the design, execution, fabrication, transportation and installation of the Artwork will be performed in a professional manner; (b) the Artwork as fabricated and installed, will be free of defects in material and workmanship, including, but not limited to, any defects or qualities which cause or accelerate deterioration of the Artwork; and (c) reasonable maintenance of the Artwork will not require procedures in excess of those described in the maintenance recommendations to be submitted by KRS to CCP hereunder.

The warranties described in this Section 6.2 shall survive for a period of three (3) years after Final Completion of the Artwork, with periodic required maintenance by CCP according to maintenance recommendations provided by KRS to CCP hereunder.  KRS shall, at the request of CCP, and at no cost to CCP, cure promptly the breach of any such warranty by KRS and which

10

repair shall be consistent with accepted professional practices including, for example, repair by means of restoration, refurbishing or re-creation of part or all of the Artwork.

**Article 7.     Insurance**

*7.1     General*

A.     Until such time as Final Completion, KRS is responsible for maintaining insurance coverage for claims and losses for both personal injury and property damage arising from performance under this Agreement.

B.     KRS's and KRS's subcontractors insurance coverage shall be with a company authorized to do business in the Commonwealth of Pennsylvania and in any other state(s) in which the Artwork will be created.  Such coverage shall include workers' compensation insurance, automobile liability insurance and general liability insurance in the amount of $1,000,000 per occurrence and $2,000,000 in the aggregate for bodily injury and property damage subject to no contractual limitation other than those found in a standard ISO Commercial General Liability form; Workers compensation insurance coverage for KRS's and KRS's subcontractors' employees in accordance with the laws of the Commonwealth of Pennsylvania and Employers Liability Insurance limits of $500,000 each employee, $500,000 each accident and a $500,000 policy limit.  Such insurance policies will be provided by KRS and KRS's subcontractors at KRS's and KRS' subcontractors' sole expense.

C.     CCP shall be named as additional insured, with respect to KRS's and KRS's Subcontractor's insurance coverage, except for workers' compensation insurance requirements.  The site address is 1700 Spring Garden Street, Pavilion Plaza, Philadelphia, PA 19130.  KRS and KRS's Subcontractors shall provide CCP with a certificate of insurance or other evidence of adequate insurance coverage in compliance with this Article 7.  Such insurance policy shall provide for at least ten (10) days prior notice of change or cancellation of policy.

D.     CCP shall insure the Artwork for the total commissioned amount or any other greater amount, at its discretion, after Final Completion of the Artwork.

**Article 8.     Reproduction Rights**

*8.1     CCP's and PRA's Reproduction Rights*

KRS retains all rights under The Copyright Act of 1976, 17 U.S.C. 101 et seq., and other rights in and to the Artwork, except ownership and possession and except as such rights are limited by this Agreement.  Because its final form is unique, KRS shall not make 3-dimensional replication of the Artwork, nor shall KRS grant permission to others to do so except with the written permission of CCP.  Notwithstanding the foregoing, KRS grants to CCP and PRA and its successors an irrevocable license to make 2-dimensional reproductions of the Artwork for non-commercial and commercial purposes, including, but not limited to, reproductions used in advertising, brochures, media publicity, catalogues, similar publications, or merchandise sold by CCP.  KRS shall have the right to approve of such 2-dimensional reproductions of the Artwork; provided, however, such approval shall not be unreasonably withheld, conditioned or delayed.

11

KRS shall not share in any revenue generated by such commercial and non-commercial reproductions issued by CCP and/or the PRA, and KRS shall not be entitled to receive any royalties therefrom.

### 8.2   KRS Credit

All reproductions by the PRA and/or CCP shall credit KRS and include a copyright notice substantially in the following form or another mutually agreed upon form: "© Koryn Rolstad, Koryn Rolstad Studios, installation date, date of publication, Funded by the Community College of Philadelphia in fulfillment of the Philadelphia Redevelopment Authority's Percent for Art Program".

### 8.3   KRS Reproduction Rights

For the avoidance of doubt, the Parties hereby acknowledge and agree that KRS also retains its rights under The Copyright Act of 1976, 17 U.S.C. 101 et seq. to make 2-dimensional reproductions of the Artwork for non-commercial purposes; provided, however, KRS hereby agrees that all such reproductions shall credit CCP as the entity responsible for funding the Project as well as the location where the Artwork is installed.

## Article 9.   KRS's Rights

### 9.1   General

In all matters pertaining to the Artwork and its maintenance, including but not limited to, the Articles in this Agreement, the provisions of the Federal Visual Artists' Rights Act of 1990 ("VARA") shall apply.

### 9.2   Maintenance

CCP recognizes that maintenance of the Artwork on a periodic basis is essential to the integrity of the Artwork. CCP shall reasonably assure that the Artwork is properly maintained and protected in accordance with the requirements of this Agreement and any material breach of which shall void KRS's warranties.

### 9.3   Repairs and Restoration

A.   CCP shall have the right to determine, after consultation with a professional conservator, when and if repairs and restorations to the Artwork will be made. KRS shall have the right to approve all repairs and restorations, provided, however, that KRS shall not unreasonably withhold approval for any repair or restoration of the Artwork. If KRS unreasonably fails to approve any repair or restoration, CCP shall have the right to make such repair or restoration. To the extent practicable, KRS shall be given the opportunity to make or personally supervise significant repairs and restorations as recommended by a professional fine art conservator and shall be paid a reasonable fee and expenses for any such services, provided that CCP and KRS shall agree in writing, prior to the commencement of any significant repairs or restoration, upon KRS's fee for such services.

12

B.    All repairs and restoration occurring after the third (3rd) annual anniversary following Final Completion of the Artwork will be the responsibility of CCP. Additionally, any repairs or damage due to extenuating circumstances (e.g., tree falling, vandalism, etc.) shall be the responsibility of CCP upon Final Completion of the Artwork.

C.    De-accessioning of Artwork will occur if one or more of the following conditions exist during the life of the Artwork: 1) The Artwork is damaged where repair is impractical or costs exceed the value of the Artwork; 2) The Artwork has faults that require repeated and excessive maintenance; and/or 3) The Artwork endangers public safety.  The VARA provisions regarding CCP's notification of KRS ninety (90) days prior to the removal of the Artwork will be followed.  All salvage costs to remove the Artwork from the Work Site shall be the responsibility of CCP.  KRS shall have first right of refusal to accept the Artwork back.  If accepted, KRS must make arrangements to remove the Artwork within thirty (30) days of commitment to accept the Artwork.

D.    All repairs and restorations by KRS shall be made in accordance with accepted practices of professional fine art conversation.

E.    CCP is responsible for adherence to the requirements of VARA.

## Article 10.    KRS as Independent Contractor

KRS, and its agents and employees, are independent contractors performing services for CCP and are not employees of CCP.

## Article 11.    Subcontracting

KRS may subcontract portions of the services to be provided hereunder at KRS's expense provided that said subcontracting: (i) shall not affect the design, appearance, intent or visual quality of the Artwork as approved by CCP; (ii) shall be carried out under the personal supervision and at the expense of KRS; and (iii) any subcontracts must be approved by CCP in accordance with the terms of this Agreement.

## Article 12.    Termination

A.    The services to be performed under this Agreement may be terminated by either party, but only for failure to comply with the material terms of this Agreement.  The non-breaching party must provide the breaching party thirty (30) calendar days advance written notice of the proposed termination and must provide the breaching party the opportunity to cure the breach within such thirty (30) calendar day period.  If the breaching party fails to cure the breach to the reasonable satisfaction of the non-breaching party, at the end of the thirty (30) calendar day period, the non-breaching party must notify the breaching party that the Agreement is terminated.

B.    If this Agreement is terminated by CCP for failure of KRS to comply with the terms of this Agreement, KRS may be held liable for the return of any monies paid under the terms of this Agreement and any and all damages incurred by CCP.  Notwithstanding anything to

13

the contrary in this Agreement, CCP shall retain all rights and remedies under this Agreement, at law, and in equity.

      C.    If this Agreement is terminated by KRS, then KRS' sole remedy shall be to receive payment (not to exceed the amount of the Fee) for all services performed by KRS prior to the date of termination of this Agreement to the extent that such services were performed in accordance with the terms of this Agreement.

      D.    If CCP terminates this Agreement for cause, KRS will be ineligible to apply for a new Percent for Art project with CCP for a period of three (3) years.

## Article 13.    Agreement Administrator

The administrator of this Agreement, including responsibility for issuing payments to KRS, shall be CCP.

## Article 14.    Non-Discrimination

In carrying out the performance of the services set forth in this Agreement, KRS shall not discriminate as to race, creed, religion, sex, age, national origin, sexual orientation, or any physical, mental or sensory disability, and KRS shall comply with the equality of employment opportunity provisions of the Commonwealth of Pennsylvania and federal law as presently existing or hereafter amended.

## Article 15.    ADA Compliance

In performing any services required hereunder, KRS shall comply with all applicable requirements of the Americans with Disabilities Act of 1990 ("ADA"); provided, however, if any changes to the ADA are promulgated and enacted after the date of this Agreement and such changes result in KRS incurring additional costs, then such additional costs shall be memorialized through an amendment to this Agreement.  KRS's responsibility to defend and indemnify CCP, as provided in this Agreement, includes, but is not limited, to claims, losses, expenses and liabilities arising from KRS's, or KRS's agents' or employees' acts or omission in violation of ADA.  It is recognized that the Work Site is not intended to be accessible, and that Pavilion Plaza which will contain the Artwork was not designed by KRS.

## Article 16.    Compliance

KRS shall be required to comply with federal, state, and city statues, ordinances and regulations applicable to the performance of KRS's services under this Agreement.

## Article 17.    Entire Agreement

This writing embodies the entire Agreement and understanding between the Parties hereto, and there are no other agreements, understandings, oral or written, with reference to the subject matters hereof that are not merged herein and superseded herby.

ACTIVE 31555916v14 11/11/2015

**Article 18.    Modification**

No alternation, change or modification of the terms of the Agreement shall be valid unless made in writing and signed by all the Parties hereto and approved by appropriate action of CCP.

**Article 19.    Waiver**

No waiver of performance by any party shall be construed as or operate as a waiver of any subsequent default of terms, covenants and conditions of this Agreement. The payment or acceptance of fees for any period after a default shall not be deemed a waiver of any right or an acceptance of defective performance.

**Article 20.    Governing Law/Venue**

A.    The Parties, through their respective project managers, will attempt to settle any dispute arising from this Agreement through consultation and negotiation in good faith and a spirit of mutual cooperation.  If cooperative efforts fail, the dispute will be mediated and/or litigated, as applicable, in accordance with Article 20(B) of this Agreement.

B.    This Agreement, regardless of where executed or performed, shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to conflicts of law provisions.  The Parties consent to the exclusive jurisdiction of the Philadelphia Court of Common Pleas and other state and federal courts in the County of Philadelphia to hear and adjudicate disputes regarding this Agreement.  Prior to filing suit for a breach of this Agreement, and subject to Article 12 of this Agreement, the Parties shall participate in good faith in non-binding mediation.

**Article 21.    Heirs and Assigns**

This Agreement shall be binding upon and shall inure to the benefit of CCP and KRS and their respective, personal representatives, successors and permitted assigns.  KRS shall not be allowed to assign this Agreement in whole or in part, without the prior written consent of CCP, which consent may be withheld by CCP, in its sole discretion.

**Article 22.    Written Notices**

All notices, requests, demands and other communications, which are required or permitted to be given under this Agreement shall be in writing and delivered by Certified Mail, Return Receipt Requested and postage prepaid (or by a recognized courier service with an asset tracking system, such as Federal Express or UPS) and shall be effective upon receipt.

For purposes of giving formal, written notice and/or to contact CCP, KRS, and/or PRA, the following addresses apply:

15

**CCP**
Community College of Philadelphia
1700 Spring Garden Street
Philadelphia, PA 19130
Attn: Gary Bixby
Director, Construction and Facility Planning
Phone: (215) 751-8189

With copies to:

Community College of Philadelphia
1700 Spring Garden Street
Philadelphia, PA 19130
Attn: Victoria L. Zellers, Esq.
Phone: (215) 751-8913

Fox Rothschild, LLP
Attn: Carrie Nase-Poust, Esq.
Stone Manor Corporate Center
2700 Kelly Road, Suite 300
Warrington, PA 18976
Phone: (215) 918-3646

**KRS**
Bannerworks, Inc. (dba) Koryn Rolstad Studios
PO Box 9446
Seattle, WA 98109
koryn@krstudios.com
206-448-1003 (Studio)
206-406-1027 (Mobile)

With a copy to:
Ironmark Law Group, PLLC
Attn:  Nicholas R. Gunn, Esq.
2033 6th Avenue, Suite 350
Seattle, WA  98121
Phone: (206) 547-1914

**PRA**
Philadelphia Redevelopment Authority
1234 Market St., 16th Floor
Philadelphia, PA 19107
Attn: Julia Guerrero
Phone: (215) 209-8619

16

**Article 23.      Conflict of Interest**

KRS warrants that it presently has no interest and shall not acquire any interest, direct or indirect, which would conflict in any manner or degree with the performance of services required under this Agreement.

**Article 24.      Records and Audit**

KRS shall maintain, for three (3) years, records which indicate the date, time and nature of services rendered.  These records shall be subject to inspection by CCP.  CCP shall have the right to audit billings both before and after payment. Payment under this Agreement shall not foreclose the right of CCP to recover excessive and/or illegal payments.

**Article 25.      Required Signatures**

The Agreement will not be binding upon any Parties hereto until all signatures required below have been obtained.

[Signature Page Follows]

17

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the last date of signature by all the Parties below:

**COMMUNITY COLLEGE OF**
**PHILADELPHIA:**

By: _____

Name:   Donald Generals, EDD

Title:    President

Date   11/24/15

**BANNERWORKS, INC. (DBA) KORYN**
**ROLSTAD STUDIOS:**

By: _____

Name:   Koryn Rolstad

Title:    President

Date   11·17·15

18

the time of Final Design these project schedule milestones shall be memorialized in an amendment to this Agreement.

\*\*\*The Student Engagement Session referenced in Section 2.1(M) may take place at any time as mutually agreed upon by KRS and CCP.

## EXHIBIT "A"

### Description of Artwork

Artwork Title:        Illuminated Growth

Project Description:

The Final Design of the Artwork must be approved by CCP.  KRS's conceptual design for the Artwork includes, without limitation, a sculpture based on a theme of "illuminated growth" that will be installed at the Work Site at Pavilion Plaza along 17th Street.

KRS Responsibilities: KRS shall design, fabricate, ship and install at the Work Site all components, including, but not limited to, the illuminated components of the Artwork. KRS shall also provide all components that allow for programming of the illuminated Artwork and provide electrical installation per engineering and construction standards (all subject to CCP's Responsibilities regarding electrical as set forth below in this Exhibit "A".).

CCP's Responsibilities: CCP shall wire electrical source from building to the Artwork; provide a means for LED elements to be wired from the Artwork to the interior of building; and provide the Work Base for the Artwork.

## EXHIBIT "B"

## Milestone and Payment Schedule

| TASK | % | PAYMENT | SCHEDULE |
|---|---|---|---|
| **Part I – Design Development** | | | |
| Upon Contract Signing | 15% | $41,250.00 | |
| KRS and CCP Collaboration as Contemplated in Paragraph 2.1(F) of the Agreement | 0% | $0.00 | **To be mutually agreed upon through the collaborative process** |
| CCP's Acceptance of the Final Design Drawings including Stamped Engineering Drawings | 15% | $41,250.00 | |
| **Part II - Fabrication** | | | |
| Upon KRS' Commencement of Fabrication and Finalization of Sample Prototypes | 20% | $55,000.00 | **See ** below** |
| Fabrication 50% Complete as Reasonably Determined by CCP | 15% | $41,250.00 | **See ** below** |
| Fabrication is 100% Complete and Ready for Base Post Installation as Reasonably Determined by CCP | 15% | $41,250.00 | **See ** below** |
| **Part III - Installation** | | | |
| CCP's Installation of Work Base | 0% | $0.00 | **See ** below** |
| Completion of Installation Bases, Art, Pool, Plaque, Documents, Etc. as Reasonably Determined by CCP | 10% | $27,500.00 | **See ** below** |
| CCP's Acceptance of Installation and KRS Completes all of its Contract Obligations (including, but not limited to, Delivering to CCP Final Archive As-Built Plans) | 10% | $27,500.00 | **June 30, 2017 (or earlier as mutually agreed upon at the time of CCP's Acceptance of Final Design)** |
| **Total** | 100% | $275,000.00 | |

** KRS and CCP shall mutually agree upon the schedule for these project milestones at the time of CCP's acceptance of the Final Design; provided, however, the mutually agreed upon dates for these project milestones must be consistent with final completion of all aspects of the project and KRS' obligations hereunder by no later than June 30, 2017. Once mutually agreed upon by KRS and CCP at

## EXHIBIT "C"

### Form of Notice of Acceptance

[Letterhead]

Date

Bannerworks, Inc. (dba) Koryn Rolstad Studios
Attn: Koryn Rolstad
PO Box 9446
Seattle, WA 98109

Dear Ms. Rolstad:

In accordance with the Agreement By And Between Community College Of Philadelphia ("CCP") And Bannerworks, Inc. (dba) Koryn Rolstad Studios ("KRS") For Public Artwork Design, Fabrication, Transportation & Installation, dated _____, 2015, (the "Agreement"), please let this letter serve as the Notice of Acceptance referenced in Section 2.5 of the Agreement.

As of _____, 201__, KRS has completed to the reasonable satisfaction of CCP: (i) all of KRS's services under this Agreement including, but not limited to, all punch list items relating to installation of the Artwork; (ii) KRS has provided CCP with all documentation required under this Agreement.  CCP reserves all rights under the Agreement regarding the correction of work discovered to be defective for any reason allowed under the Agreement after the execution of this Notice of Acceptance.  The warranty requirements, in accordance with the Agreement, shall become effective as of [insert date earlier in this paragraph].

As such, all monies due and owing to KRS, including any retention, for this site shall be released and paid to KRS within thirty (30) calendar days.

Sincerely,

_____